UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $52,037.96 seized from account number | : | 3:14-cv-00591-WWE |
| XXXXX3161 at JPMorgan Chase & Co. | : | |
| held in the name of | : | |
| SAND INTERNATIONAL, INC., | : | |
| | : | |
| JPMorgan Chase cashier's check number | : | |
| 9805806932 in the amount of $65,209.00, | : | |
| | : | |
| One 2014 BMW X5, | : | |
| vin number 5UXKR0C56E0C25750, | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON CLAIMANT SAND INTERNATIONAL INC.'S
MOTION TO DISMISS THE VERIFIED COMPLAINT**

The government brought this civil action *in rem* to enforce the provision of 18 U.S.C. §

981(a)(1)(C) that provides for the forfeiture of proceeds traceable to wire fraud in violation of 18

U.S.C. §1343.

The defendants are: $52,037.96 seized from account number XXXXX3161 at JPMorgan

Chase held in the name of Sand International, Inc.; JPMorgan Chase cashier's check number

9805806932 in the amount of $65,209; and one 2014 BMW X5, vin number

5UXKR0C56E0C25750.  Claimant Sand International has moved to dismiss the verified

complaint.  For the following reasons, claimant's motion will be granted.

**BACKGROUND**

The following background is taken from the allegations of the complaint, which are

considered to be true for purposes of this ruling.

On October 21, 2013, the New Haven Field Office of the United States Secret Service ("USSS") was contacted by a special agent from the Cincinnati, Ohio Field Office who had identified a straw purchaser ("SP") in the District of Connecticut who has been involved in an on-going scheme to purchase high-end automobiles in the Greater Connecticut area that are immediately transported overseas.

On October 22, 2103, the New Haven Office contacted the SP and learned that he was to purchase another vehicle in the manner described above on October 30, 2013. The SP was to meet an individual at the Whole Foods parking lot in Danbury, Connecticut, where he would be driven to an automobile dealership to complete a pre-arranged purchase of a vehicle in his name. While being driven to the dealership, the SP was provided with a cashier's check payable to the dealership for the entire purchase price of the vehicle.

The SP acknowledged that he has engaged in other straw purchases of high end automobiles. The SP explained that after each straw purchase, he would surrender the vehicle a short distance from the dealership to individuals responsible for having the vehicle transported out of the country to be sold overseas. When the SP received title and registration documentation in his name for the vehicle, he would promptly deliver title to different unidentified individuals acting as his "handlers." Typically, the handlers receiving title and registration documentation from the SP were different people each time.

On October 30, 2013, law enforcement met with the SP and learned that the SP had been contacted by an individual involved in the scheme who told him that he would be purchasing two vehicles later that day. One vehicle to be purchased was a BMW from a dealership located in North Haven, Connecticut.

On October 30, 2013, law enforcement established surveillance in the area of the Whole

2

Foods parking lot in Danbury where a gray Honda Civic with a New York license plate was observed entering the parking lot and driving to where the SP was waiting. The SP entered the Honda that contained a female driver and two male passengers. The Honda was then surveilled traveling from the Whole Foods parking lot to the North Haven BMW dealership. The Honda and its occupants were observed leaving the dealership after the SP exited the vehicle and entered the car dealership to purchase the BMW. The SP was then observed exiting the dealership driving a 2014 BMW X5. A short distance down the road, law enforcement came upon the SP transferring possession of the 2014 BMW X5 to the occupants of the Honda. Law enforcement interrupted the exchange and interviewed all four individuals separately. Law enforcement learned that the SP was in possession of a JPMorgan Chase cashier's check in the amount of $65,209.00 that was made payable to Orange County BMW for the straw purchase of the second vehicle that day. The cashier's check was numbered 9805806932 drawn from account number XXXXX1433. The SP told law enforcement that when he got into the Honda in Danbury he was provided with the cashier's check that had just been used to purchase the BMW X5 from North Haven BMW and the cashier's check made payable to Orange County BMW for the second vehicle.

After being advised of her Miranda rights, the female driver of the Honda identified herself and told law enforcement that she had been recruited to drive from New York to Connecticut that morning. She claimed that this was her first involvement with the other individuals in her car. A second occupant of the Honda had $4,000 in United States Currency on his person and did not appear to speak English. Through a Chinese interpreter, it was learned that his name is Ming Lin, who indicated that he did not wish to speak to law enforcement. His cell phone was subsequently seized as evidence. It was later determined that he was legally in the United States.

A second male occupant of the Honda was identified as Colin Cheung. The USSS Cincinnati

3

Field Office had previously identified Cheung as a suspect in a similar scheme to purchase vehicles in the Cincinnati area through straw purchasers for resale overseas. After being advised of his Miranda rights, Cheung agreed to speak with law enforcement. After being brought to the New Haven Field Office, Cheung admitted to being involved in the scheme to purchase vehicles that are later transported overseas.

In a sworn, written statement, Cheung admitted to being involved in an ongoing scheme to purchase vehicles as described above since August, 2011. Cheung also stated that he currently works for an individual named James Kim, who arranges for the purchases of the vehicles by telephoning dealerships and claiming to be the buyer of the vehicles that are ultimately purchased through straw purchasers. Once Kim arranges for the purchase of a vehicle, Cheung is responsible for meeting the straw purchasers and transporting them to the car dealerships to complete the straw purchase transaction.

Cheung told law enforcement that he was also responsible for transporting the recently purchased vehicles to warehouses located in New Jersey. Cheung said that the checks given to the SP on October 30, 2013, were provided by the other male occupant of the Honda, Ming Lin. Cheung claims that he had only worked with Lin once before.

Cheung also confirmed that the JPMorgan Chase cashier's check given to the SP on October 30, 2013, was intended to be used to purchase another BMW X5 from BMW of Orange County. Cheung consented to the search of his cell phone which he surrendered to law enforcement.

Later on October 30, 2013, the USSS Special Agents returned to North Haven BMW and met with the general manager, who provided copies of the documentation related to the straw purchase of the 2014 BMW X5 earlier that day. A copy of the JPMorgan Chase cashier's check used to purchase the BMW was check number 9805806932. On October 31, 2013, law enforcement learned that the

cashier's check provided by North Haven BMW for the purchase of the 2014 BMW X5 was funded from JPMorgan Chase bank account number XXXXX3161 in the name of Sand International, Inc.

The 2014 BMW X5 VIN 5UXKR0C56E0C25750 purchased by the SP on October 30, 2013, was seized from Colin Cheung by law enforcement on that same day. Cheung signed an Affidavit, Waiver of Claim and Notice, and Consent to Forfeiture of Personal/Real Property form on which he swore under penalty of perjury that he was the sole owner of the BMW. Cheung also stipulated to probable cause for the forfeiture of the BMW as it represented proceeds of and/or property used to facilitate wire fraud.

On November 1, 2013, law enforcement applied for, received, and executed a federal seizure warrant for $52,037.96 from Account Number XXXXX3161 at JPMorgan Chase held in the name of Sand International, Inc.

On November 22, 2013, law enforcement applied for and received a federal seizure warrant for JPMorgan Chase Cashier's Check Number 9805806932 in the amount of $65,209.00 for the straw purchase of a BMW at Orange County BMW in New Jersey on October 30, 2013. The seizure warrant was executed on November 25, 2013.

Based on the above information it is believed that: $52,037.96 seized from Account Number XXXXX3161 at JPMorgan Chase held in the name of Sand International, Inc.; JPMorgan Chase Cashier's Check Number 9805806932 in the amount of $65,209.00; and One 2014 BMW X5, VIN 5UXKR056E0C25750 are subject to forfeiture to the Plaintiff United States as constituting proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343.

The United States prays that Warrants of Arrest *in rem* be issued for the defendants $52,037.96 seized from Account Number XXXXX3161 at JPMorgan Chase held in the name of Sand International, Inc.; JPMorgan Chase Cashier's Check Number 9805806932 in the amount of

$65,209.00; and One 2014 BMW X5, VIN 5UXKR056E0C25750; that due notice be given to all parties to appear and to show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

## DISCUSSION

Claimant Sand International has filed a motion to dismiss the verified complaint, arguing that (1) the amended complaint fails to meet federal pleading standards; (2) the government fails to plead actual fraud; (3) the government fails to allege a victim or loss; and (4) the funds in the JPMorgan Chase bank account are not forfeitable.

Pursuant to Federal Rules of Civil Procedure Supplemental Rule G, which governs pretrial procedures in forfeiture *in rem* actions, the government's complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  The burden of proof is on the government to establish by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).

Here, the government asserts that the property is subject to forfeiture because it constitutes proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343.  "The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  U.S. v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007).

> Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid-which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail

and wire fraud statutes.

> In *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir.1970), the defendants sold stationery. The defendants' scheme consisted of directing their sales personnel to misrepresent their identities to prospective customers so that the customers would be willing to entertain their offers. . . . (noting, as an example, that the sales personnel fraudulently claimed that they had been referred by a friend of the customer or an officer of the customer's firm). We concluded that no conviction under the mail fraud statute could stand where the misrepresentation was not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain.

Shellef, 507 F.3d at 108.

Here, the government's fraud allegations rest on the testimony of the BMW dealership indicating that it would not have entered into the contract had it known that the BMW would be immediately sent overseas for resale.[1] The government admits that it intends, through discovery, "to further understand the motive for engaging in the purchase of an automobile through misrepresentations and third-party straw owners" and that "[t]hrough the ongoing case, a trier of fact will have more evidence to consider when determining if the misrepresentations made to the dealership were, in fact material in nature." Pl.'s Mem. in Opp'n at 9 [doc. # 13]. Moreover, as the alleged misrepresentation was an act of omission, it seems the government ought to demonstrate a duty on behalf of the buyer to reveal any plan to export a newly purchased vehicle. No such duty has been alleged. Finally, the Second Circuit has held that "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim." U.S. v. Chandler, 98 F.3d

---

[1]The government also contends that the specific identity of the buyer could be material to the dealership's decision to sell, but considering that this was a cashier's check transaction for the BMW (not credit), the court is skeptical that the buyer's identity materially affected the nature of the bargain. See Shellef, 507 F.3d at 108.

711, 715 (2d Cir. 1996).

In sum, the government has failed to adequately delineate how it will establish by a preponderance of the evidence that the subject property is traceable to wire fraud in violation of 18 U.S.C. § 1343.  Indeed, the nature of the fraud is only implicitly contained in the complaint.

Claimant's motion to dismiss will be granted, but the government will be afforded 14 days to submit an amended complaint to clarify the government's ability to meet its burden of proof at trial.

## CONCLUSION

Claimant's motion to dismiss [doc. # 10] is GRANTED, but the government may submit an amended complaint within 14 days of this order.

Dated this 30th day of December, 2014, at Bridgeport, Connecticut.


  /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

8